Clara J. CHAR, Special Guardian, Guardian of the Property for Theodore S. Salsedo, Plaintiff,

v.

MATSON TERMINALS INC., et al., Defendants.

Civ. No. 91–00591 ACK.

United States District Court, D. Hawaii.

Oct. 22, 1992.

Richard C. DeWaele, Honolulu, HI, for plaintiff.

Anna M. Elento–Sneed, Patrick H. Jones, Carlsmith Ball Wichman Murray Case Mukai & Ichiki, William J. Jenner, Honolulu, HI, for defendants.

Gabriel Aio, Honolulu, HI, pro se.

## ORDER GRANTING IN PART AND DENYING IN PART MATSON'S MOTION FOR SUMMARY JUDGMENT AND DENYING MATSON'S MOTION FOR SANCTIONS

KAY, Chief Judge.

### I. BACKGROUND

This case was previously before the Court on April 20, 1992, when the Court granted Defendant Matson's Motion to Dismiss Various Counts from the Complaint.[1] The Court dismissed Counts I, V, and VI, as preempted by the Collective Bargaining Agreement ("CBA"). The following Counts remain

---

1. Shortly before the hearing on Matson's motion to dismiss, Magistrate Kurren granted Plaintiff's motion to amend the Complaint. This Court

against Defendant Matson: [2]

Count II: Breach of Employment Contract

Count IV: Defamation

Count VII: Negligence

Count VIII: Malicious Prosecution/Abuse of Legal Process

Count IX: Punitive Damages

Theodore Salsedo ("Salsedo") was employed as a security guard by Matson Terminals, Inc. ("Matson"). On December 22, 1987, Matson fired Salsedo for allegedly sexually harassing Filomena Allie, a female employee of Matson's janitorial contractor. Matson conducted and investigation and interviewed both Salsedo and Allie. Salsedo claims that during an investigation of his alleged conduct, Defendant Gabriel Aio, Security Unit and Bargaining Agreement Chairman for Defendant International Longshoreman's and Warehousemen's Union, Local 160 ("Union"), falsely told Matson officials that Plaintiff raped a woman in San Francisco, masturbated in a Matson van, and "engaged in improper conduct" with Matson employees' wives. Plaintiff's First Amended Complaint ("Amended Complaint") ¶ 8, page 3. For all relevant times herein, Plaintiff was a party to the Matson and ILWU Collective Bargaining Agreement ("CBA").

Pursuant to the CBA, Salsedo protested his dismissal by filing a grievance with Matson. After his grievance was denied, Salsedo asked that the matter be submitted to binding arbitration, also under the CBA's grievance procedure. However, after initially setting the matter for arbitration, the Union decided that Salsedo's grievance lacked merit and withdrew the matter from arbitration.

In addition to pursuing the grievance procedures, Salsedo filed an unemployment compensation claim with State of Hawaii's Unemployment Insurance Division ("Unemployment Division"). On January 7, 1988, the Unemployment Division granted Salsedo unemployment insurance benefits. Matson appealed the decision. The appeal hearing

commenced on March 8, 1988, but had to be continued to March 18, 1988. Prior to March 18, however, Salsedo attempted suicide by shooting himself in the head. Consequently, the unemployment appeal was taken off calendar. The matter was re-set for hearing on March 21, 1990, however, Matson withdrew its appeal on March 16, for "business reasons." Salsedo filed the original complaint in March of 1991 and filed an Amended Complaint on May 12, 1992.

On March 30, 1992, Clara Char, Salsedo's wife, was appointed Special Guardian of Salsedo's property by the Hawaii state court. On June 3, 1992, the magistrate substituted Char as the plaintiff in this case on Salsedo's behalf (throughout this Order, Char will be referred to as "Plaintiff" or "Char"). Matson moves for summary judgment on the Counts remaining against it and for sanctions against Plaintiff's attorney.

## II. DISCUSSION

### A. STANDARD FOR SUMMARY JUDGMENT

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Id.* at 322, 106 S.Ct. at 2552.

If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on

therefore construed Matson's motion as applying to the Amended Complaint.

2. Count III contains a cause of action for breach of duty of fair representation; however, this Count does not involve Matson, the only defendant bringing the instant motion.

the mere allegations in the pleadings in order to preclude summary judgment. *T.W. Electrical Serv. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987) (citations omitted). Instead, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, " '*specific facts* showing that there is a genuine issue for trial.' " *Id.* (quoting Fed. R.Civ.P. 56(e)) (emphasis in original). At least some " 'significant probative evidence tending to support the complaint' " must be produced. *Id.* (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987) (citing, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). Moreover, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted). Indeed, "if the factual context makes the non-moving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics*, 818 F.2d at 1468 (emphasis in original) (citing, *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Services*, 809 F.2d at 630–31.

## B. FEDERAL HYBRID § 301/FAIR REPRESENTATION CLAIM

Matson argues that it is entitled to judgment as a matter of law because Plaintiff's Count II is time barred. The parties agree that Count II presents a hybrid § 301 LMRA/fair representation claim. Likewise, both parties acknowledge that Plaintiff's complaint was filed after the applicable six month statute of limitations on such a hybrid claim (six months) had expired. *See, DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 169, 103 S.Ct. 2281, 2293, 76 L.Ed.2d 476 (1983). Thus, the only issue presented by Matson's motion on Count II is whether the six month limitations period has been tolled.

Plaintiff claims that Salsedo's mental incompetency tolls the statute of limitations. Plaintiff offers two arguments in support of her position that the *DelCostello* six month limitations period has been tolled: (1) HRS § 657–13 applies, and (2) federal equitable tolling principles apply.

### 1. HRS § 657–13.

Section 657–13 provides in pertinent part,

If any person entitled to bring any action specified in this part ... is, at the time the cause of action accrued ...: (2) Insane ... such a person shall be at liberty to bring such actions within the respective times limited in this part, after the disability is removed or at any time while the disability exists.

Analysis of the Supreme Court's decision in *DelCostello* indicates that § 657–13 is inapplicable to hybrid § 301/fair representation claims (hereinafter "hybrid claims"). In *DelCostello,* the Court discussed the statute of limitations period applicable to hybrid claims.

The Court first discussed the general rule that when a federal statute has no express limitations period, federal courts should "borrow" the most suitable substitute from analogous state law statutes. *DelCostello,* 462 U.S. at 157, 103 S.Ct. at 2287. However, the Court held that with respect to hybrid claims, state law does not provide any analogous statutes. *Id.* at 165, 103 S.Ct. at 2291 ("We conclude that state limitations periods for vacating arbitration awards fail to provide an aggrieved employee with a satisfactory opportunity to vindicate his rights under § 301 and the fair representation doctrine." (footnote omitted)). Instead, the Court looked to the federal National Labor Relations Act for the appropriate statute of limitations. *Id.* at 169, 103 S.Ct. at 2293 ("We refer to § 10(b) of the National Labor Relations Act, which establishes a 6–month period for making charges of unfair labor practices to the NLRB." (footnote omitted)).

■ Once one recognizes the source of a hybrid claim's statute of limitations, it becomes clear that state tolling statutes are inapplicable. State law tolling statutes operate to extend the limitation periods of state law statutes. Since federal, not state, law dictates the period after which an employee may not file a lawsuit, it follows that state law extensions of the limitations period simply do not apply to federal statute of limitations.

In the instant case, this principle is especially clear. Section 657–13 provides that insanity will toll the statutes of limitations on cause of action "in this part." HRS § 657–13. Thus, by § 657–13's own terms, only statutes of limitations created by Chapter 657 of the Hawaii Revised Statutes (entitled "Limitations of Actions"), are subject to tolling. Since the limitations period on hybrid claims do not in any way derive from Chapter 657, § 657–13 is inapplicable. In *Harris v. Ford Motor* 635 F.Supp. 1472 (E.D.Mo. 1986), the district court followed a similar line of reasoning:

In *DelCostello,* the Supreme Court determined that courts would no longer borrow state limitation periods for hybrid § 301/

fair representation suits. It follows that federal law, not state law, should govern questions of tolling.

*Id.* at 1474. Accordingly, the Court finds that federal law, not state law, governs whether the limitations period in this case was tolled; and § 657–13 does not operate to toll the limitations period on Plaintiff's hybrid claim.

### 2. Federal Tolling Principles.

■ The Ninth Circuit has not ruled on whether mental incompetency may toll federal statutes of limitations. Indeed, in *Atkins v. Union Pacific Railroad Co.,* 685 F.2d 1146 (9th Cir.1982), the Court explicitly left open the question of whether a plaintiff's mental incompetency could toll the statute of limitations on the Federal Employer's Liability Act. After finding that the Plaintiff had not established facts sufficient to support a finding that he was mentally incompetent, the Court stated,

Because we find no issue of fact, we need not decide whether the plaintiff's incompetency will ever toll the FELA statute of limitations. *But see, Brooks v. Southern Pacific Co.,* 105 Ariz. 442, 445, 466 P.2d 736, 739 (1970) (holding that FELA statute of limitations is tolled by incompetence).

*Id.* at 1148 (citation in original).

The cases from other jurisdictions are sharply divided on this issue. One line of cases holds that mental incompetency may not toll federal statutes of limitations. *E.g., Harris v. Ford Motor Co., supra,* 635 F.Supp. 1472 (E.D.Mo.1986) (and cases cited therein) (mental incompetency does not toll *DelCostello* six month period on hybrid claims). However, most of the decisions relied upon in *Harris* involved claims against the federal government and therefore are called into question by the Supreme Court's recent ruling in *Irwin v. Veterans Administration,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (holding that equitable tolling principles apply to suits against the United States in the same manner as they apply to private parties).[3]

**3.** In *Irwin,* the Court listed two non-exhaustive examples of instances where it had previously

On the other hand, another line of cases finds that mental incompetency will toll federal statutes of limitations. Indeed, this Court has previously held that a plaintiff's mental incompetency, in appropriate cases, may toll the statute of limitations for filing a tax refund action. *Scott v. United States,* 795 F.Supp. 1028 (D.Hawaii 1992). In *Scott,* the Court relied on three cases, all of which held that mental incompetency may toll federal statutes of limitations: *Lopez v. Citibank,* 808 F.2d 905 (1st Cir.1987) (mental incompetency may toll Title VII statute of limitations); *Johnsen v. United States,* 758 F.Supp. 834 (E.D.N.Y.1991) (mental incompetency may toll statute of limitation on tax refund actions); and *Bassett v. Sterling Drug, Inc.,* 578 F.Supp. 1244 (S.D.Ohio 1984) (mental incompetency may toll Age Discrimination in Employment Act statute of limitations); *see also, Llewellyn v. Celanese Corp.,* 693 F.Supp. 369 (W.D.N.C.1988) (mental incompetency may toll Title VII statute of limitations); *Moody v. Bayliner Corp.,* 664 F.Supp. 232 (E.D.N.C.1987) (same).

In *Lopez,* the First Circuit held that while there is no absolute rule of equitable tolling on the grounds of insanity in Title VII cases, federal courts may toll the applicable statute of limitations on a case-by-case basis. The Court first acknowledged the line of cases finding against such tolling (these cases are the same cases relied upon by Matson and by the district court in *Harris*). *Lopez,* 808 F.2d at 906. The Court distinguished those cases on the basis that most of them involved suits against the United States and concerned "considerations of sovereign immunity." *Id.* at 906–7. The Court then found that "an even longer line of common law authority finds, in insanity, a ground for tolling a limitations period." *Id.* at 907 (citing *Developments in the Law–Statutes of Limitations,* 63 Harv.L.Rev. 1177, 1229 (1950)).

After finding that mental incompetency could equitably toll the statute of limitations in an appropriate case, the *Lopez* Court found that the facts of the case before it did not present a situation where equity allowed tolling. The Court noted that the plaintiff was represented by counsel and pursued his discrimination claim during his illness. In such a situation, the Court held, plaintiff's mental illness "was not of a sort that makes it equitable to toll the statute." *Id.*

■ Consistent with this Court's ruling in *Scott,* the Court adopts the reasoning of the *Lopez* line of cases and finds that mental incompetency may equitably toll the statute of limitations, but only in appropriate cases.[4] Indeed, insanity is one of the fundamental equitable reasons for tolling statutes of limitations. Nevertheless, the Court further finds that such tolling is not appropriate in this case.

As Matson points out, and supports with competent evidence, prior to and after his self-inflicted gunshot wound, Salsedo and Char were aware of Salsedo's legal rights and took steps to enforce those rights against Matson. Salsedo shot himself approximately three months after he was terminated by Matson.[5] Prior to this incident, Salsedo had hired Char, the plaintiff in this case, as his "EEO Consultant" in his dispute with Matson. *See,* Exhibit B of Matson's Reply Memorandum (Deposition of Clara Char). Indeed, in a letter to Matson, dated December 14, 1987, Salsedo advises Matson that "Ms. Char, Equal Employment Opportunity Consultant, is acting on my behalf" regarding the alleged sexual harassment charges. *Id.* (Letter from Salsedo). In fact, on December 14, 1987, Char met with Matson officials and threatened legal action on behalf of Salsedo. *Id.* (Memorandum for Record from Char at 2). Moreover, Char assisted Salsedo in chal-

recognized equitable tolling.

**4.** The Court declines to follow the reasoning of *Harris, supra,* which held that mental incompetency does not toll the statute of limitations on a hybrid claim. *Harris* relied on the Supreme Court's *DelCostello* opinion which established that the six month statute of limitations was the "proper balance" between the national interest in stable bargaining relationships and an employ-

ee's interest in rectifying unjust settlement practices. *DelCostello,* however, was silent on the tolling issue and should not be read to encompass the tolling issue.

**5.** The exact date on which Salsedo attempted suicide is unclear; however, it is clear that he was terminated by Matson on December 22, 1987 and shot himself in March of 1988.

lenging his termination through the grievance, arbitration, and EEO stages and even drafted letters on his behalf. *See,* Exhibits C–I of Matson's Reply Memorandum (excerpts from Char's deposition and letters drafted by her).

Plaintiff Char continued to care for Salsedo and manage his affairs through 1988 until she was appointed his Special Guardian. In May, 1988, Plaintiff became Salsedo's unofficial "caregiver" and managed his business, as well as personal affairs. *See,* Exhibits L–N of Matson's Reply Memorandum. She even assisted Salsedo in seeking legal advice in this matter during an interview with an attorney regarding his EEOC complaint. *See,* Exhibits J and K of Matson's Reply Memorandum. Char also successfully blocked Salsedo's family's attempt to have a legal guardian appointed for him and helped Salsedo institute a lawsuit against his sister. *See,* Exhibits O–S of Matson's Reply Memorandum.

Most significantly, Plaintiff obtained a power of attorney from Salsedo in December 1988. *See,* Exhibits T of Matson's Reply Memorandum. As Char explained in her deposition, one of the purposes of the power of attorney was "to help me [Char] to conduct his business." *Id.* at page 435, lines 12–19. The record also reflects that Char retained an attorney, Jeffrey Taylor, to assist Salsedo in both his lawsuit with against his sister and against Matson. *See,* Exhibit R of Matson's Reply Memorandum. Finally, Char provided the relevant information to Salsedo's current attorney, Richard DeWaele, in preparing the complaint in this lawsuit and has assisted him in bringing this lawsuit. *See,* Exhibits U and T of Matson's Reply Memorandum.

Plaintiff offers little to rebut the evidence provided by Matson. Plaintiff simply submits reports from a psychologist and psychiatrist that Salsedo is *presently* mentally incompetent. There is no evidence that Salsedo was incompetent at the time his hybrid cause of action accrued: Which is, at the latest, July 2, 1990 (the date that the Union informed Salsedo that his grievance "is not meritorious and is not winnable and therefore ... will not [be] process[ed] ... to arbitration."). *See,* Exhibit H of Matson's Memorandum in Support of Motion.

The record presented by Matson, and unrebutted by Plaintiff, establishes that Char was actively pursuing Salsedo's legal remedies against Matson and others while the limitation period in this case was running. She was in constant contact with Matson officials and affirmatively sought legal advise on Salsedo's behalf. As in *Lopez, supra,* Salsedo was represented by someone who was "apparently capable of pursuing the claim in his behalf during the relevant time period." *Lopez,* 808 F.2d at 907. Although Char is not an attorney, she did seek legal advice for Salsedo, obtained a power of attorney from Salsedo, succeeded in initiating a lawsuit on Salsedo's behalf against Salsedo's sister, and ultimately provided an attorney with all of the relevant information regarding this lawsuit. Moreover, Plaintiff has failed to establish that Salsedo was mentally incompetent at the time the limitations period was running. Under these circumstances, equity does not warrant tolling of the statute of limitations period. Under the rationale of *Lopez,* the Court grants Matson's Motion for Summary Judgment on Count II.

## C. STATE LAW CLAIMS

### 1. *Count IV: Defamation.*

Matson moves for summary judgment on Count IV (Defamation), claiming (1) that a defamation cause of action regarding certain statements is time-barred; and (2) other statements are privileged and cannot support a defamation claim. In her Opposition Memorandum, Plaintiff limits her defamation Count to two statements. The first was allegedly made by Matson employee Anthony Robello to Office of Federal Contract Compliance Program ("OFCCP") investigator Louise M. Kato. Plaintiff alleges that Robello told Kato that Salsedo had raped a woman in San Francisco. Second, Plaintiff alleges that Matson employee R.G. Meleski wrote defamatory comments in a January 15, 1988 letter to the Marine Fireman's Union. The Court addresses Plaintiff's second claim first.

### (a) Meleski Letter.

HRS § 657–4 provides that "[a]ll actions for libel or slander shall be commenced within two years after the cause of action accrued, and not after." In this case, both parties agree that the Meleski letter was written on January 15, 1988. Plaintiff claims that his mental incompetency tolls the two year limitation period. As stated above, HRS § 657–13 only applies to toll the statute of limitation if the plaintiff is insane *at the time the cause of action accrued.* In this case, it is undisputed that Salsedo was not mentally incompetent in January or February of 1988. Accordingly, any defamation claim based upon the Meleski letter is time-barred by § 657–4. The Court therefore grants summary judgment on any defamation claim arising from the Meleski letter.

### (b) Robello Comments.

■ Matson argues that Robello's comments to Kato were qualifiedly privileged because they were made pursuant to Kato's official OFCCP compliance review.[6]

> A qualified privilege arises (1) when the author of a defamatory statement reasonably acts in the discharge of some public or private duty, legal, moral, or social and (2) where the publication concerns a subject matter in which the author and the recipients of the publication have a correlative interest or duty.

> . . . . .

> However, the qualified privilege is conditional and it must be exercised (1) in a reasonable manner and (2) for a proper purpose. The immunity is forfeited if the defendant steps outside the scope of or abuses the privilege.... The qualified privilege may be abused by ... (2) use of the occasion for an improper purpose, or (3) lack of belief or grounds for belief in the truth of what is said....

> . . . . .

> The question whether the qualified privilege was abused is one of fact for the trier of fact to decide.

*Kainz v. Lussier,* 4 Haw.App. 400, 404–5, 667 P.2d 797 (1983) (citations omitted).

■ In this case, Plaintiff concedes that Robello's statements were made during the course of his OFCCP review. However, in an affidavit, Ms. Kato states that statements made by Mr. Robello, *i.e.,* that he had heard rumors that Mr. Salsedo had been charged with rape in San Francisco, "were gratuitous and not associated with my compliance review." Affidavit of Louise M. Kato ¶ 6 at 2. The Court finds that there is a material issue of fact regarding whether the Robello comment was made in the course of Robello's and Kato's public duty. If the statement was made outside the scope of their duties, as Ms. Kato claims in her affidavit, then the qualified privilege does not exist and Matson may be liable for defamation. Consequently, the Court denies Plaintiff's motion for summary judgment on Count IV arising from the Robello statements.

### 2. Count VII: Negligence.

■ Count VII is only against Matson. It alleges,

> 35. As an employer, [Matson] is required to use reasonable care and due diligence in investigating complaints against its employees. [Matson] failed to conduct a minimally adequate investigation of the allegations of misconduct against Plaintiff. Had [Matson] conducted an adequate investigation, no proof of any allegations or misconduct would have been forthcoming. To the contrary, [Matson] based its decision to terminate [Salsedo] completely upon unsubstantiated statements, rumor and innuendo.

> 36. But for the negligence of [Matson] as aforesaid, [Salsedo] simply would not have been terminated and he would not have been damaged, physically, emotionally and financially.

Amended Complaint at 7.

Section 301 of the LMRA ("§ 301") creates jurisdiction for federal district courts over "suits for violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a). Section

---

**6.** Matson, of course, denies that the comments were ever made.

301 operates to preempt any state law causes of action for violation of a collective bargaining agreement. In this respect, the preemptive force of § 301 "is so powerful that it displaces entirely" such state law causes of action. *Stikes v. Chevron USA, Inc.,* 914 F.2d 1265, 1267 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2015, 114 L.Ed.2d 101 (1991). Section 301 preempts state law claims which are founded upon rights created by a collective bargaining agreement or which are substantially dependent on analysis of a collective bargaining agreement. *Id.* at 1268.

> The Supreme Court has held that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as preempted by federal labor-contract law.

*Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985). This analysis applies to suits sounding in both contract and tort. *E.g., Allis–Chalmers* (state tort law claim preempted); *Newberry v. Pacific Racing Association,* 854 F.2d 1142 (9th Cir.1988) (state law tort claim for emotional distress preempted); *Hyles v. Mensing,* 849 F.2d 1213 (9th Cir.1988) (state law tort claim for emotional distress preempted and stating "if evaluation of the tort law claim is inextricably intertwined with the terms of the labor contract, it is preempted." *Id.* at 1216 (internal quotation marks omitted)).

An examination of Plaintiff's Count VII reveals that it is, in essence, a claim for violation of the CBA. The CBA provides that an employee may be discharged for certain specified instances of misconduct. CBA at § 12.01, page 12.[7] The CBA also provides for a "grievance procedure" whereby an employee may challenge his discharge. *Id.* at § 14, pages 12–14. Pursuant to § 14.01 of the CBA an employee may have the grievance investigated.

■ Plaintiff's negligence claim is premised upon the allegation that Matson did not adequately investigate his grievance because it relied on unsubstantiated statements in its decision to terminate Salsedo. In order to resolve Plaintiff's negligence cause of action, the Court would have to decide whether or not the procedures utilized by Matson were proper under the CBA. That is, in order for Plaintiff to recover, the Court would have to find that Matson's procedures were not in accordance with Matson's duty under the CBA. Succinctly put, Matson's duty to investigate grievances derives from the CBA. Plaintiff's negligence claim is a classic example of state law claim founded upon rights created by a collective bargaining agreement. *See, Stikes,* 914 F.2d at 1268. Consequently, Plaintiff's negligence claim is preempted by § 301 and Count VII is therefore dismissed.[8]

### 3. Count VIII: Abuse of Process and Malicious Prosecution.

■ Plaintiff alleges that Matson's appeal of the Unemployment Division's decision to award Salsedo unemployment insurance benefits constitutes abuse of process and malicious prosecution.

#### (a) Abuse of Process.

■ There are no Hawaii cases establishing the tort "abuse of process;" however, the Kentucky district court considered and

---

7. Section 12.01 of the CBA provides that "[e]mployees shall be subject to ... discharge ... by the Employer for insubordination, pilferage, drunkenness, incompetence, failure to perform work as required, violation of the terms of this Agreement or failure to observe safety rules and regulations, and the Employer's House Rules."

The Employer's House Rules include, *inter alia,* as follows: Committing assault and battery upon another employee during working hours; use of profane, insulting or obscene language toward any employee; being found guilty of any act on the job which constitutes a crime under Hawaii or federal law; and, using company equipment for purposes other than company business without permission.

8. Plaintiff's claim that the presence of a fair representation claim somehow alters § 301 preemption analysis is without merit. Several Ninth Circuit cases make clear that the presence of a fair representation claim simply has no effect on § 301 preemption analysis. *E.g., Perugini v. Safeway Stores, Inc.,* 935 F.2d 1083 (9th Cir. 1991); *Harris v. Alumax Mill Products, Inc.,* 897 F.2d 400 (9th Cir.1990).

rejected a claim strikingly similar to Plaintiff's. In *McCarthy v. KFC Corp.*, 607 F.Supp. 343 (D.C.Ky.1985), as in this case, the plaintiff alleged abuse of process when KFC resisted plaintiff's claim for unemployment insurance benefits. The Court found that this count of the plaintiff's complaint "borders on the frivolous." The Court noted that in an abuse of process claim, "it is clear that the *judicial* process must in some manner be involved." *Id.* at 345 (emphasis in original) (citing *Prosser and Keaton on Torts*). The *McCarthy* Court summarily dismissed plaintiff's claim under Rule 12(b)(6), stating that unemployment compensation hearings are not "judicial proceedings." *Id.* Since there are no Hawaii cases on point, this Court will follow the reasoning of *McCarthy* as supported by *Prosser* and grant summary judgment on Plaintiff's abuse of process claim because it fails to alleged involvement of the judicial process.[9]

### (b) Malicious Prosecution.

There are three essential elements in a claim for malicious prosecution: (1) that the prior proceedings were terminated in the plaintiff's favor, (2) that the prior proceedings were initiated without probable cause, and (3) that the prior proceedings were initiated with malice. *Myers v. Cohen*, 67 Haw. 389, 391, 688 P.2d 1145 (1984). It is undisputed that (1) the prior proceeding (the Unemployment Division appeal) was terminated in Plaintiff's favor; however, Plaintiff has failed to make a *prima facie* showing on the remaining two elements. Regarding the second element,

HRS § 383–30(2) disqualifies a person who has been discharged for misconduct from receiving unemployment benefits. After an investigation, Matson discharged Salsedo. Thus, Matson had probable cause under § 383–30(2) to initiate an appeal of the Unemployment Division's award of benefits to Salsedo.[10] Moreover, even if there was not probable cause for the appeal, Matson would not be liable for malicious prosecution. The tort of malicious prosecution will only lie when the defendant initiates the proceedings. *See, Prosser and Keeton on Torts, supra,* § 120 at 893. Here, Plaintiff, not Matson, initiated the Unemployment Division proceedings.

Likewise, Plaintiff has not established an issue of fact regarding whether Matson's appeal was initiated with malice. The only evidence to which Plaintiff refers is a statement by Robello that Gabriel Aio, the bargaining agreement Chairman for the Union, once had a fight with Salsedo. Plaintiff fails to allege when this fight occurred. More importantly, there is no evidence that Aio had anything to do with Matson's decision of whether or not to appeal the Unemployment Division's decision. Indeed, it is highly unlikely that a Union representative would have any input on such a decision by Matson management and/or lawyers. Consequently, the Court finds that Plaintiff has failed to produce evidence sufficient to create a material issue of fact on the malice prong of her malicious prosecution claim.

Because Plaintiff has failed to establish a *prima facie* case of malicious prosecution,

---

**9.** Nevertheless, even if the Court were to proceed to the other elements of the abuse of process tort, Matson would still be entitled to judgment as a matter of law. The essential elements of an abuse of process claim are (1) use of the judicial process; (2) for an ulterior purpose; and (3) a wilful act in use of the process not proper in the regular conduct of that proceeding. *McCarthy,* 607 F.Supp. at 345; *Prosser and Keaton on Torts,* § 121 at 898 (5th ed.). *Prosser* explains that in order to establish a claim of abuse of process, the plaintiff must show that the proceedings were instigated to secure some collateral advantage amounting to attempted extortion. *Id.* Plaintiff has failed to provide any evidence that Matson appealed the Unemployment Division's decision for any ulterior purpose or to secure a collateral advantage. Indeed, it appears that by dropping

the appeal, Salsedo obtained the unemployment benefits he sought. Likewise, Plaintiff has failed to even allege that Matson did anything improper during the course of the proceeding.

**10.** In her Opposition Memorandum, Plaintiff tries to bootstrap her failure to adequately investigate claim (dismissed in other Counts), into the malicious prosecution Count. However, once Salsedo was terminated, Matson had probable cause to challenge his unemployment benefits claim. If Plaintiff premises her malicious prosecution Count on Matson's failure to adequately investigate the charges against Salsedo, then the Count is preempted by § 301 because it is founded upon rights created by the CBA. *See, Stikes,* 914 F.2d 1265.

the Court grants Matson's motion for summary judgment on Count VIII.

### 4. Count IX: Punitive Damages.

Matson correctly states that punitive damages are derivative. Matson argues that if all of the Counts against it are dismissed, then so must be the punitive damages Count. Because Plaintiff's Count IV (alleging defamation from Robello's statements) still remains, summary judgment on punitive damages is inappropriate.

### D. MOTION FOR RULE 11 SANCTIONS

The Supreme Court recently characterized the duties created by Rule 11 as follows:

> Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and "not interposed for any improper purpose." An attorney who signs the paper without such a substantiated belief "shall" be penalized by "an appropriate sanction."

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990). Before filing a complaint, a party has an "affirmative duty" to conduct reasonable inquiry into both the facts and the law asserted. *Lloyd v. Schlag*, 884 F.2d 409, 412 (9th Cir.1989). If a violation is determined, sanctions must be imposed. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir.1991) (*en banc*).

 The Court in *Townsend* noted that sanctions must be imposed if either (a) the paper is filed for an improper purpose or (b) the paper is frivolous. 929 F.2d at 1362. The word "frivolous" is shorthand used to denote a filing that is both (i) baseless and (ii) made without a reasonable and competent inquiry. *Id.* In determining whether a filing is baseless and whether an inquiry is reasonable, the Court looks to "all the circumstances of [the] case." *Id.* at 1364 (quoting *Cooter & Gell, supra* 496 U.S. at 401, 110 S.Ct. at 2459). The "reasonable" or "objective" standard applies to both prongs of the "frivolously filed inquiry" in addition to the "improper purpose inquiry." *Id.* at 1362,

1364. In any event, if a court determines that the filing of a complaint is not objectively baseless, then the court should not sanction the plaintiff under Rule 11 based on the filing of the complaint. *See id.* (stating the "improper purpose inquiry" is subsumed by the "frivolousness inquiry" when the complaint is not objectively baseless.)

 Matson argues that Plaintiff's attorney failed to conduct a reasonable inquiry into the law and facts of this case. However, as the preceding discussion indicates, Plaintiff's Amended Complaint presents difficult legal and factual issues. This is especially so in regards to the tolling issue in Count II, where the law is unsettled and the federal circuits are split. In addition, summary judgment is not appropriate on the Robello comments portion of Count IV and thus will not support sanctions. Under "all of the circumstances," Plaintiff's filing was not frivolous. The Court denies Matson's motion for sanctions.

### III. CONCLUSION

Based upon the foregoing discussion, the Court grants Matson's motion for summary judgment with respect to Counts II (breach of employment contract), VII (negligence), and VIII (abuse of process and malicious prosecution). Furthermore, the Court grants the motion with respect to the Meleski letter portion of Count IV (defamation) but denies the motion as to the Robello statements. The motion is also denied with respect to Count IX (punitive damages). In addition, the Court denies Matson's Rule 11 motion.

Finally, the Court declines to retain jurisdiction over Plaintiff's remaining state law claims against Matson. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (retention of pendent state law claims discretionary; "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." (footnote omitted)).

IT IS SO ORDERED.