66 F.3d 691
 76 A.F.T.R.2d 95-6696, 64 USLW 2204,
95-2 USTC P 50,531,
95-2 USTC P 60,211
 Clinton WEBB; Nationsbank of Virginia, N.A., formerly known
as Sovran Bank, N.A., Co-executors of The Estate
of Mary Morton Parsons, Deceased,
Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 94-1854.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 7, 1995.
Decided Oct. 2, 1995.
 
 ARGUED: Charles Frederick Witthoefft, Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, Virginia, for Appellants. Gilbert Steven Rothenberg, Tax Division, United States Department of Justice, Washington, DC, for Appellee. ON BRIEF: Everette G. Allen, Jr., John C. Ivins, Jr., Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, Virginia, for Appellants. Loretta C. Argrett, Assistant Attorney General, Gary R. Allen, Bridget M. Rowan, Helen F. Fahey, United States Attorney, Tax Division, United States Department of Justice, Washington, DC, for Appellee.
 Before RUSSELL and DIANA GRIBBON MOTZ, Circuit Judges, and FABER, United States District Judge for the Southern District of West Virginia, sitting by designation.
 Affirmed by published opinion. Judge DIANA GRIBBON MOTZ wrote the majority opinion, in which Judge FABER joined. Judge RUSSELL wrote a dissenting opinion.
 OPINION
 DIANA GRIBBON MOTZ, Circuit Judge:
 
 
 1
 The sole question presented in this case is whether certain provisions of the Internal Revenue Code governing tax refund claims are subject to equitable tolling. The district court held that they were not; we affirm, although on somewhat different grounds than those relied upon by the district court.
 
 I.
 
 2
 Clinton Webb and Nationsbank of Virginia, N.A., f/k/a Sovran Bank, N.A. ("Nationsbank"), in their capacities as co-executors of the estate of Mary Morton Parsons, filed this action in the United States District Court for the Eastern District of Virginia seeking a refund of gift taxes, penalties, and interest that they assert were wrongfully paid on Parsons' behalf in October, 1980. For purposes of this appeal, we take the facts and circumstances alleged in the complaint as true. Summit Health, Ltd. v. Pinhas, 500 U.S. 322, 325, 111 S.Ct. 1842, 1844-45, 114 L.Ed.2d 366 (1991); White v. United States, 53 F.3d 43, 44 (4th Cir.1995).
 
 
 3
 Parsons was a long-time resident of Richmond, Virginia. Born in 1902, she was the only child of one of the founders of a local life insurance company and thus enjoyed considerable wealth. Having only a limited understanding of financial matters, however, Parsons relied on others to manage her affairs. After Parsons' husband died, her sister-in-law, Lelia Parsons, moved into her residence in order to manage her personal affairs. Upon her sister-in-law's death in 1972, Parsons retained the services of Dr. Alvin Q. Jarrett, a social acquaintance, as both her personal physician and to oversee her personal and financial affairs. Jarrett in turn retained B. Roland Freasier, Jr. to serve as Parsons' personal legal counsel.
 
 
 4
 Through systematic physical and emotional abuse during the ensuing fourteen years, Jarrett and Freasier induced Parsons to relinquish to them total control over her day-to-day affairs. They persuaded her to move into virtual seclusion in Virginia Beach, Virginia, where they confined her to her bed under heavy sedation. They discharged most of Parsons' household staff and prevented her from receiving mail or telephone calls and from seeing visitors. They also induced her to grant to each of them powers-of-attorney, thus enabling them to manipulate her financial affairs for their own benefit.
 
 
 5
 As a result of their fraudulent activities, Jarrett and Freasier were able to divert a substantial portion of Parsons' assets to themselves and their families without Parsons' knowledge or consent. One such transaction involved the unauthorized transfer to Jarrett and Freasier of 930,568 shares of Parsons' stock. In connection with this transaction, Jarrett and Freasier filed a gift tax return on Parsons' behalf with the Internal Revenue Service ("IRS") on August 18, 1980, and in October, 1980 they paid to the IRS, out of Parsons' own funds, a gift tax in the amount of $4,324,822.54, together with certain penalties and interest. After a subsequent audit by the IRS, Jarrett and Freasier paid in excess of $7,000,000.00 in additional gift taxes, penalties, and interest in 1986 and 1987, again out of Parsons' own funds, bringing the total assessment against Parsons for these illicit stock transfers to $11,362,876.88.
 
 
 6
 Parsons eventually discovered the fraudulent transfers in the summer of 1987 and filed an action in state court to recover her lost assets. Upon recovering substantially all of the stock transferred to Jarrett and Freasier, Parsons filed a claim with the IRS on April 5, 1988 seeking a refund of the gift taxes, penalties, and interest paid in connection with the fraudulent transfers. Acknowledging that the taxes were wrongfully paid, the IRS refunded a total amount of $9,844,541.03, which included the taxes paid in 1986 and 1987, but declined to refund any amount paid more than two years prior to the filing of Parsons' refund claim, i.e., the $4,324,822.54 paid in 1980.
 
 
 7
 Webb and Nationsbank, as co-executors of Parsons' estate, brought this action seeking to recover the disallowed portion of Parsons' refund claim. Because the refund claim was concededly untimely under Sec. 6511 of the Internal Revenue Code of 1954, 26 U.S.C. Sec. 6511, the district court held that it lacked subject matter jurisdiction and so dismissed the action. The court determined that if Sec. 6511 could be equitably tolled, the complaint set forth facts that "would have established the applicability of equitable tolling to this case," but found equitable tolling was not permissible in tax cases. 850 F.Supp. 489, 493 (E.D.Va.1994). Relying on United States v. Dalm, 494 U.S. 596, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990), as "more instructive" than Irwin v. Department of Veterans Affairs, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), id. at 492, the court concluded that the tax laws were technical provisions that must be rigorously enforced.
 
 II.
 
 8
 The United States, as sovereign, is immune from suit unless it waives that immunity. Library of Congress v. Shaw, 478 U.S. 310, 315, 106 S.Ct. 2957, 2961-62, 92 L.Ed.2d 250 (1986). A statute of limitations requiring that a suit against the government be brought within a certain time period constitutes a condition on the government's waiver of immunity, United States v. Mottaz, 476 U.S. 834, 841, 106 S.Ct. 2224, 2229, 90 L.Ed.2d 841 (1986), and as such should be "construed strictly in favor of the sovereign, and not enlarge[d] ... beyond what the [statutory] language requires." Ruckelshaus v. Sierra Club, 463 U.S. 680, 685, 103 S.Ct. 3274, 3278, 77 L.Ed.2d 938 (1983) (citations and internal quotations omitted); see also Block v. North Dakota, 461 U.S. 273, 287, 103 S.Ct. 1811, 1820, 75 L.Ed.2d 840 (1983) ("although we should not construe such a time-bar provision unduly restrictively, we must be careful not to interpret it in a manner that would 'extend the waiver beyond that which Congress intended' " (quoting United States v. Kubrick, 444 U.S. 111, 117-18, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979))).
 
 
 9
 With respect to suits against it for tax refunds, of course, the United States has to some extent waived its sovereign immunity. Section 1346(a)(1) of Title 28 of the United States Code gives federal district courts jurisdiction over suits against the United States "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." However, the general jurisdictional grant in Sec. 1346(a)(1) must be read to incorporate the requirements of 26 U.S.C. Secs. 7422(a) and 6511(a). United States v. Dalm, 494 U.S. 596, 601-02, 609, 110 S.Ct. 1361, 1364-65, 1368-69 (1990); see also United States v. Forma, 42 F.3d 759, 763 (2d Cir.1994) ("statutory provisions and court interpretations have placed a number of conditions on the explicit waiver of sovereign immunity instituted through 28 U.S.C. Sec. 1346(a)(1)"). Section 7422(a) provides that no suit for a tax refund may be maintained unless "a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." Section 6511, in turn, constitutes one of these "provisions of law" governing refund claims.
 
 
 10
 Specifically, Sec. 6511(a) sets forth the applicable statute of limitations for claims for credits or refunds under the Internal Revenue Code. It provides in pertinent part:
 
 
 11
 Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.
 
 
 12
 Section 6511(b) then sets forth certain "[l]imitation[s] on allowance of credits and refunds," providing in subsection (b)(1) that:
 
 
 13
 [n]o credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.
 
 
 14
 Finally, Sec. 6511(b)(2) sets forth certain "[l]imit[s] on amount of credit or refund" as follows:
 
 
 15
 (A) Limit where claim filed within 3-year period.
 
 
 16
 If the claim [for refund] was filed by the taxpayer during the 3-year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return.
 
 
 17
 (B) Limit where claim not filed within 3-year period.
 
 
 18
 If the claim [for refund] was not filed within such 3-year period [prescribed in subsection (a) ], the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim.
 
 
 19
 The parties here agree that the refund claim that was filed on April 5, 1988 was untimely under the plain language of Sec. 6511 because it was filed more than three years after the date on which the gift tax return was filed (August 18, 1980), and more than two years after the date on which the relevant portion of the gift tax was paid (October, 1980). The sole issue presented in this case is whether Sec. 6511 is subject to equitable tolling. The district court concluded that it was not and that Parsons' refund claim was therefore time-barred, thus depriving the court of subject matter jurisdiction.
 
 
 20
 If this case had arisen prior to 1990, there would seemingly be no question that the district court's holding was correct. Because a statute of limitations is a condition on the government's waiver of sovereign immunity and thus must be "strictly observed," Block, 461 U.S. at 287, 103 S.Ct. at 1820, courts have traditionally declined to permit equitable considerations to toll statutes of limitations in cases against the United States. See, e.g., Soriano v. United States, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957). Moreover, equity generally plays a very limited role in tax cases. See, e.g., Lewyt Corp. v. Commissioner of Internal Revenue, 349 U.S. 237, 249, 75 S.Ct. 736, 744, 99 L.Ed. 1029 (1955) (Frankfurter, J., dissenting) ("Where the taxing measure is clear, of course, there is no place for loose conceptions about the 'equity of the statute'.... [O]ne should sail close to the shore of literalness in dealing with the technical problems which are the subject matter of revenue laws"). Thus, the task of an appellate court in such cases is "not that of weighing equities, but of determining technical application of the law [consistent] with the well-established view that tax laws are technical and, for the most part, are to be accordingly interpreted." Ewing v. United States, 914 F.2d 499, 501 (4th Cir.1990) (citations omitted), cert. denied, 500 U.S. 905, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991); see also Chertkof v. United States, 676 F.2d 984, 991 n. 13 (4th Cir.1982) ("The world at large, and the income-tax world in particular, are full of hardship and loss despite which it is deemed sound policy to enforce general rules inflexibly.") (quoting J.M. Maguire et al., "Section 820 of the Revenue Act of 1938," 48 Yale L.J. 509, 515 (1939)).
 
 
 21
 Not only are equitable principles generally of limited application in tax cases, but statutes of limitations have long been considered of particular importance in such cases. As the Supreme Court explained almost fifty years ago:
 
 
 22
 It probably would be all but intolerable, at least Congress has regarded it as ill-advised, to have an income tax system under which there never would come a day of final settlement and which required both the taxpayer and the Government to stand ready forever and a day to produce vouchers, prove events, establish values and recall details of all that goes into an income tax contest. Hence, a statute of limitation is an almost indispensable element of fairness as well as of practical administration of an income tax policy.
 
 
 23
 Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 301, 67 S.Ct. 271, 273, 91 L.Ed. 296 (1946). The Court noted that statutes of limitations "are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the [avoidable] and unavoidable delay. They have come into the law not through the judicial process but through legislation." Id. at 301-02, 67 S.Ct. at 273 (citation and internal quotations omitted). Accordingly, "[a]s statutes of limitation are applied in the field of taxation, the taxpayer sometimes gets advantages and at other times the Government gets them. Both hardships to the taxpayers and losses to the revenues may be pointed out." Id. at 302, 67 S.Ct. at 273 (footnote omitted). Thus, "[i]f there are to be exceptions to the statute of limitations [in tax cases], it is for Congress rather than for the courts to create and limit them." Id. at 303, 67 S.Ct. at 274; see also Badaracco v. Commissioner of Internal Revenue, 464 U.S. 386, 398, 104 S.Ct. 756, 764, 78 L.Ed.2d 549 (1984) ("Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement. This is especially so when courts construe a statute of limitations, which must receive a strict construction in favor of the Government." (citations and internal quotations omitted)). Therefore, in light of the "indispensable" role played by statutes of limitations in tax cases and the limited relevance of equitable principles in such cases generally, it is not surprising that the taxpayers here are unable to cite to any instance, prior to 1990, in which any court has held equitable tolling applicable to tax refund claims.
 
 
 24
 However, in 1990 the Supreme Court issued its opinion in Irwin v. Department of Veterans Affairs, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), a case that the taxpayers here assert radically changed these well-established rules. Irwin involved a Title VII discriminatory discharge suit brought against the United States by an employee who had been fired from his job with the Veteran's Administration. The employee filed a complaint with the Equal Employment Opportunities Commission (EEOC) alleging that he had been unlawfully discharged on the basis of his race and physical disability. The EEOC dismissed his complaint by letter dated March 19, 1987, informing him that he had a right to file a civil action under Title VII within 30 days. However, according to the employee, he did not receive the EEOC dismissal letter until April 7, 1987. He filed a complaint on May 6, 1987, which the district court deemed untimely and dismissed for lack of subject matter jurisdiction. The court of appeals affirmed, holding that the 30-day period under Title VII operated as an absolute jurisdictional limit.
 
 
 25
 In the Supreme Court, as he had below, the employee in Irwin asserted that the 30-day filing period under Title VII was subject to equitable tolling. See Brief for Petitioner at 10-11. He noted that the time limits for Title VII suits against private employers were subject to equitable tolling, see Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982), and that the Court had previously concluded that principles applicable to private-sector Title VII cases were equally applicable to public sector cases, see Chandler v. Roudebush, 425 U.S. 840, 864, 96 S.Ct. 1949, 1961, 48 L.Ed.2d 416 (1976). Citing Title VII's legislative history, the employee argued that Congress intended to extend the same rights and remedies to federal employees that had already been provided to private-sector employees, and that therefore the time limits for Title VII suits against the federal government should similarly be subject to equitable tolling. See Brief for Petitioner at 9; see also Brief for Amicus Curiae National Treasury Employees Union in Support of Petitioner at 12-13. The government had to concede that the Court had permitted equitable tolling in similar suits against private employers but argued that "[s]uits against the sovereign ... are not the same as suits against private parties." Brief for the Respondents at 6. There was no suggestion made by any party that the case should apply beyond the context of Title VII.
 
 
 26
 The Supreme Court in Irwin concluded that compliance with the limitations period at issue there was not an absolute jurisdictional predicate to filing a Title VII suit against the federal government but instead could be equitably tolled. In so holding, the Court specifically noted that "the statutory time limits applicable to lawsuits against private employers under Title VII are subject to equitable tolling." 498 U.S. at 95, 111 S.Ct. at 457 (footnote omitted). Accordingly, the Court concluded that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States. Congress, of course, may provide otherwise if it wishes to do so." Id. at 95-96, 111 S.Ct. at 457 (emphasis added).
 
 
 27
 Obviously, the Supreme Court could have confined its holding in Irwin to claims arising under Title VII, or to those arising under remedial statutes generally. The Court had previously applied the doctrine of equitable tolling in a limited number of cases involving remedial statutes, concluding that it was consistent with Congress' intent in enacting statutes that were "humane and remedial," see Burnett v. New York Central Railroad Co., 380 U.S. 424, 427-28, 85 S.Ct. 1050, 1054-55, 13 L.Ed.2d 941 (1965) (regarding the Federal Employers' Liability Act), or that were "unusually protective" of claimants, see Bowen v. City of New York, 476 U.S. 467, 480, 106 S.Ct. 2022, 2030, 90 L.Ed.2d 462 (1986) (regarding the Social Security Act), thereby "honor[ing] the remedial purpose of the legislation as a whole," see Zipes, 455 U.S. at 398, 102 S.Ct. at 1135. The Court could have similarly limited its holding in Irwin. However, the language employed in Irwin is clearly much broader than that. Indeed, the Supreme Court, after noting that its prior practice of deciding each case on an ad hoc basis had the "disadvantage of continuing unpredictability without the corresponding advantage of greater fidelity to the intent of Congress," expressly stated that it was announcing a "general rule to govern the applicability of equitable tolling in suits against the Government." 498 U.S. at 95, 111 S.Ct. at 457.
 
 
 28
 Consistent with this broad language, Irwin's "rebuttable presumption of equitable tolling" has since been applied in cases against the federal government other than those arising under Title VII. See, e.g., Fadem v. United States, 52 F.3d 202, 205-06 (9th Cir.1995) (Quiet Title Act); Goodhand v. United States, 40 F.3d 209, 213 (7th Cir.1994) (Federal Tort Claims Act); Glarner v. United States, Dept. of Veterans Admin., 30 F.3d 697, 701 (6th Cir.1994) (same); Long v. Frank, 22 F.3d 54, 58 (2d Cir.1994) (ADEA), cert. denied, --- U.S. ----, 115 S.Ct. 938, 130 L.Ed.2d 883 (1995); Justice v. United States, 6 F.3d 1474, 1478 (11th Cir.1993) (Public Vessels and Suits in Admiralty Acts); Catawba Indian Tribe of South Carolina v. United States, 982 F.2d 1564, 1571-72 (Fed.Cir.) (Tucker Act), cert. denied, --- U.S. ----, 113 S.Ct. 2995, 125 L.Ed.2d 689 (1993); Nunnally v. MacCausland, 996 F.2d 1, 3-4 (1st Cir.1993) (Civil Service Reform Act). Thus, courts have applied the "presumption" enunciated in Irwin in a variety of contexts.
 
 
 29
 Courts are divided, however, as to whether the rebuttable presumption of equitable tolling applies in tax refund cases. See, e.g., Brockamp v. United States, 859 F.Supp. 1283, 1287-89 (C.D.Cal.1994) (equitable tolling inapplicable), appeal pending, No. 94-56424 (9th Cir.); Scott v. United States, 847 F.Supp. 1499, 1504-07 (D.Haw.1993) (tolling applies; Sec. 6511 equitably tolled by taxpayer's alcoholism), appeals pending, Nos. 94-15321, 94-15323 (9th Cir.); Wiltgen v. United States, 813 F.Supp. 1387, 1394-95 (N.D.Iowa 1992) (tolling applies; Sec. 6511 equitably tolled by taxpayer's mental illness); Johnsen v. United States, 758 F.Supp. 834, 835-36 (E.D.N.Y.1991) (same); see generally Ronald A. Stein, "Will Equitable Tolling of the Statute of Limitations Gain Wider Acceptance in Tax Cases?" 81 J. Tax'n 370 (Dec.1994). Significantly, no court has grappled with what we believe to be the critical distinction--for equitable tolling purposes--between tax refund suits and most other actions against the federal government.
 
 
 30
 Crucial to the Supreme Court's holding in Irwin, that equitable tolling applies in suits under Title VII against the United States, was the fact that "the statutory time limits applicable to lawsuits against private employers under Title VII are subject to equitable tolling." 498 U.S. at 95, 111 S.Ct. at 457. Equal treatment of private and government defendants was also the basis for the Court's formulation of its "general rule," i.e., that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." Id. at 95-96, 111 S.Ct. at 457. The Court reasoned that
 
 
 31
 [o]nce Congress has made such a waiver [of sovereign immunity], we think that making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver. Such a principle is likely to be a realistic assessment of legislative intent as well as a practically useful principle of interpretation.
 
 
 32
 Id. at 95, 111 S.Ct. at 457 (emphasis added).
 
 
 33
 Thus, in Irwin the Supreme Court held that where equitable tolling applies in a particular action between private parties, it similarly applies in such an action against the government. This makes sense as a "realistic assessment of legislative intent," for unless specified otherwise, there is no reason to assume that Congress would intend to make it inherently more difficult to bring suit against the government than against a private defendant.[1] It also makes sense as a "practically useful principle of interpretation," enabling courts simply to apply the same equitable principles that are relevant in the private sector context to public-sector cases, without requiring further inquiry into specific congressional intent. The Court's express goal in Irwin was to level the playing field between private litigants and the government.
 
 
 34
 Accordingly, when equitable tolling applies in a case brought against a private litigant, it follows that equitable tolling should presumptively apply in a comparable case against the United States. See also id. at 97, 111 S.Ct. at 458-59 (White, J., concurring in part and concurring in the judgment) ("like statutes of limitations for suits between private litigants, limitations periods for suits against the Government will now presumptively be subject to equitable tolling" (first emphasis added)). Tellingly, in finding Irwin 's "presumption of equitable tolling" applicable in other contexts, courts have consistently recognized this principle, i.e., that the government should be treated in the same manner as a private defendant, as the rationale for the Court's holding in Irwin. See, e.g., Fadem, 52 F.3d at 205-06; Glarner, 30 F.3d at 701; Justice, 6 F.3d at 1478 n. 13; Nunnally, 996 F.2d at 3; Catawba Indian Tribe, 982 F.2d at 1571.
 
 
 35
 Unlike tort actions or employment disputes, however, tax refund cases cannot be brought against private litigants, nor are they even comparable to suits that can be brought against private litigants. Taxation is neither a "penalty imposed on the taxpayer nor a liability which he assumes by contract." Welch v. Henry, 305 U.S. 134, 146, 59 S.Ct. 121, 125, 83 L.Ed. 87 (1938). "The power to tax 'is an incident of sovereignty, and is coextensive with that to which it is an incident. All subjects over which the sovereign power of a state extends, are objects of taxation....' " International Harvester Co. v. Wisconsin Dept. of Taxation, 322 U.S. 435, 444-45, 64 S.Ct. 1060, 1065-66, 88 L.Ed. 1373 (1944) (quoting M'Culloch v. Maryland, 17 U.S. (4 Wheat.) 316, 429, 4 L.Ed. 579 (1819)). It constitutes an exercise of the government's "sovereign rights," rather than an attempt "to enforce either on its own behalf or that of private parties what are in the nature of private rights." See United States v. Administrative Enterprises, Inc., 46 F.3d 670, 673 (7th Cir.1995).[2]
 
 
 36
 Thus, taxes are "different." Forma, 42 F.3d at 765. They "are the life-blood of government." Bull v. United States, 295 U.S. 247, 259, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935). "A tax, in the general understanding of the term, and as used in the Constitution, signifies an exaction for the support of the Government." United States v. Butler, 297 U.S. 1, 61, 56 S.Ct. 312, 317, 80 L.Ed. 477 (1936). "It is but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens," Welch, 305 U.S. at 146, 59 S.Ct. at 125, "[and even taxes] on the exercise of personal rights and privileges .... were known in England and the Colonies before the adoption of the Constitution, and must be taken to be embraced within the wide range of choice of subjects of taxation." Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 508, 57 S.Ct. 868, 872, 81 L.Ed. 1245 (1937).
 
 
 37
 By definition, then, tax refund suits are limited to cases where a taxpayer is suing the government for a refund. Because tax refund suits are always brought against the government, never against private parties, the presumption announced in Irwin does not apply to them. Since there can be no equitable tolling in such suits against private defendants, the rule in Irwin that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States" has no force here. Applying the doctrine of equitable tolling in a tax refund action, like this one, would neither serve as a "realistic assessment of legislative intent" nor as a "practically useful principle of interpretation," and nothing counsels a departure here from the traditional judicial reluctance to introduce equitable principles into the tax laws.[3]
 
 
 38
 Indeed, just nine months prior to Irwin the Supreme Court stressed the importance of strictly construing statutes of limitations in the tax context, noting:
 
 
 39
 The very purpose of statutes of limitations in the tax context is to bar the assertion of a refund claim after a certain period of time has passed, without regard to whether the claim would otherwise be meritorious. That a taxpayer does not learn until after the limitations period has run that a tax was paid in error, and that he or she has a ground upon which to claim a refund, does not operate to lift the statutory bar.
 
 
 40
 Dalm, 494 U.S. at 609 n. 7, 110 S.Ct. at 1369 n. 7. The government here contends that Dalm controls this case. In fact, Dalm holds only that the doctrine of equitable recoupment, applicable where the government has taxed a single taxable event under two inconsistent theories, cannot be "the sole basis for jurisdiction" for an untimely refund claim where the taxpayer has already litigated her tax liability without raising such a claim. Id. at 611, 110 S.Ct. at 1369-70. As Justice Stevens observed in dissent, "[t]his is not a decision that will be much celebrated or often cited [and][f]ew cases are affected.... The case casts a shadow on the Executive--and on this Court--but otherwise has no apparent importance." Id. at 612, 110 S.Ct. at 1370 (Stevens, J., dissenting, joined by Marshall and Brennan, JJ.). Thus, Dalm is not controlling here. But the holding in Dalm is a strong indication by the Supreme Court, almost contemporaneous with the rule announced in Irwin, that equity is not to displace the strict time limits set forth in the Internal Revenue Code. Id. at 610-11, 110 S.Ct. at 1369-70. Significantly, the Supreme Court's opinion in Irwin did not purport to modify Dalm; indeed, Irwin failed even to mention Dalm.
 
 
 41
 Accordingly, in view of the special nature of tax refund suits and given the well-established significance of statutes of limitations in tax cases and the limited relevance of equitable principles in such cases, we conclude that Irwin 's rebuttable presumption of equitable tolling is not applicable in tax refund suits.
 
 III.
 
 42
 Even if Irwin 's presumption of equitable tolling were applicable in tax refund suits, the taxpayers would still not prevail here because that presumption is, in all events, rebuttable and has effectively been rebutted here. In addition to holding that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States," the Irwin Court emphasized that "Congress, of course, may provide otherwise if it wishes to do so." Irwin, 498 U.S. at 95-96, 111 S.Ct. at 457-58. To date, only one circuit has reached the question of whether Irwin's presumption of equitable tolling has in fact been rebutted in the present context. See Oropallo v. United States, 994 F.2d 25 (1st Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 705, 126 L.Ed.2d 671 (1994).[4] There, the First Circuit, in an opinion joined by then Judge Breyer, answered that question in the affirmative. In Oropallo, a taxpayer discovered that he had overpaid his taxes and sought a refund nearly eight years later. The IRS rejected his claim as untimely. The taxpayer filed suit against the government, arguing that the limitations period of Sec. 6511(a) should be equitably tolled due to his incarceration and alleged carbon monoxide poisoning, which rendered him incapacitated for several years subsequent to the tax overpayment.
 
 
 43
 While apparently concluding that Irwin 's general presumption as to equitable tolling was applicable in tax refund suits, the First Circuit found that this presumption had been rebutted by a statutory scheme that is inconsistent with equitable tolling. Id. at 31. The Oropallo court heavily relied on Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), where the Supreme Court considered whether to adopt a federal limitations period in private suits under Sec. 10(b) of the Securities Exchange Act of 1934, and, if so, whether that period would be subject to equitable tolling. After examining the text of Sec. 10(b), the Court in Lampf selected a 1-and-3-year limitations period comparable to Sec. 9(e) of the 1934 Act, 15 U.S.C. Sec. 78i(e), which provides that "[n]o action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation." Lampf, 501 U.S. at 358-61 and n. 6, 111 S.Ct. at 2779-81 and n. 6. Citing Irwin, the Court acknowledged that "[t]ime requirements in law suits ... are customarily subject to equitable tolling." Id. at 363, 111 S.Ct. at 2782 (internal quotations omitted). It also recognized that, in fraud cases, the limitations period does not usually begin running until the fraud is discovered. Id. Nevertheless, the Lampf Court concluded that Sec. 9(e) is not subject to equitable tolling because "the equitable tolling doctrine is fundamentally inconsistent with the 1-and-3-year structure." Id. The Court explained that "[t]he 1-year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary," and that the 3-year period acts as an "outside limit," itself "inconsistent with tolling." Id. (citation and internal quotations omitted).
 
 
 44
 After comparing Sec. 6511 of the Internal Revenue Code with Sec. 9(e) of the Securities Exchange Act, the First Circuit in Oropallo held that, "[b]ecause, together, section 6511(a) and (b)(2)(A) function like the 1-and-3-year period found inconsistent with equitable tolling in Lampf, we conclude that those provisions may not be equitably tolled." 994 F.2d at 31. The Oropallo Court reasoned:
 
 
 45
 [S]ection 6511(a) serves simply to identify which taxpayers have properly positioned themselves to obtain a refund. Like the 1-year period in Lampf, however, it does not describe which of those potential claimants will actually succeed in pursuing their rights. That task is left to section 6511(b)(2)(A), which, significantly, the tax code characterizes not as a limitations period, but as a "limit on [the] amount of credit or refund".... Unquestionably, then, th[e] date [mandated by Sec. 6511(b)(2)(A) ] serves as an absolute cut-off point. By imposing an "outside limit" or "cut-off" on the amount of taxes which can be recovered, section 6511(b)(2)(A) operates like the three-year portion of the limitations period in Lampf, and thus is a "period of repose inconsistent with tolling."
 
 
 46
 Id. (quoting Lampf, 501 U.S. at 363, 111 S.Ct. at 2782). We find this rationale compelling.[5]
 
 
 47
 Therefore, even if Irwin 's general presumption as to equitable tolling is applicable in tax refund cases, Sec. 6511(b)(2) serves as a separate and independent "time barrier[ ]" to recovery, id. at 30, a period of repose which itself, standing alone, is "inconsistent with tolling." Lampf, 501 U.S. at 363, 111 S.Ct. at 2782. Of course, the taxpayers here are correct that Sec. 6511(b)(2) is different from the three-year provision at issue in Lampf. It is not as "pure" a statute of repose as that contained in Sec. 9(e) of the Securities Exchange Act, but instead works together with Sec. 6511(a) to operate like a statute of limitations. However, as the taxpayers themselves concede, Sec. 6511(b)(2) also "defines the amount of" and "states a limit on" the recovery available in a tax refund suit. Brief for Appellants at 38. Indeed, Congress specifically captioned Sec. 6511(b)(2) as a "[l]imit on [the] amount of credit or refund," as contrasted to Sec. 6511(a) which is captioned as a "[p]eriod of limitation on filing [a refund] claim." Contrary to the taxpayers' assertions, the First Circuit in Oropallo recognized that the statutory scheme here is not identical to that in Lampf but nevertheless concluded, as we do, that Sec. 6511(b)(2), like the three-year provision at issue in Lampf, is analogous to a statute of repose. As the First Circuit observed in Oropallo:
 
 
 48
 Section 6511(b)(2)(A) works together with section 6511(a) and section 6513(b)(1) to bar recovery of any refund claims on late returns not filed with three years after the due date of the return, and thus it clearly operates like a statute of limitations. However, Congress's characterization of section 6511(b)(2)(A) as a "limit on [the] amount of credit or refund" rather than as a limitations period indicates more clearly than a simple limitations period would that Congress intended to establish an outside limit on the recovery of refunds.
 
 
 49
 994 F.2d at 30 n. 7.
 
 
 50
 That Sec. 6511(b)(2) is analogous to a statute of repose is significant given the well-recognized distinctions between statutes of limitations and statutes of repose. While the former is "a procedural device that operates as a defense to limit the remedy available from an existing cause of action," a statute of repose, in contrast, "creates a substantive right in those protected to be free from liability after a legislatively-determined period of time." First United Methodist Church v. United States Gypsum Co., 882 F.2d 862, 865-66 (4th Cir.1989) (citations omitted), cert. denied, 493 U.S. 1070, 110 S.Ct. 1113, 107 L.Ed.2d 1020 (1990).
 
 
 51
 Statutes of limitations are motivated by considerations of fairness to defendants and are intended to encourage prompt resolution of disputes by providing a simple procedural mechanism to dispose of stale claims. Statutes of repose are based on considerations of the economic best interests of the public as a whole and are substantive grants of immunity based on a legislative balance of the respective rights of potential plaintiffs and defendants struck by determining a time limit beyond which liability no longer exists.
 
 
 52
 Id. (citations omitted); see also Goad v. Celotex Corp. 831 F.2d 508, 510-11 (4th Cir.1987), cert. denied, 487 U.S. 1218, 108 S.Ct. 2871, 101 L.Ed.2d 906 (1988).
 
 
 53
 Thus, "as a general rule," while a statute of limitations is "tolled by a defendant's fraudulent concealment of a plaintiff's injury because it would be inequitable to allow a defendant to use a statute intended as a device of fairness to perpetrate a fraud," a statute of repose is typically "an absolute time limit beyond which liability no longer exists and is not tolled for any reason because to do so would upset the economic balance struck by the legislative body." United States Gypsum Co., 882 F.2d at 866 (emphasis added) (citation omitted); see generally Christopher R. Leslie, "Den of Inequity: The Case for Equitable Doctrines in Rule 10b-5 Cases," 81 Calif. L.Rev. 1587, 1591 (1993) ("a statute of repose is a type of statute of limitations which is not subject to equitable principles"). The Supreme Court's observations in Lampf with respect to the three-year period of repose contained in Sec. 9(e) of the Securities Exchange Act are therefore equally applicable here:
 
 
 54
 "[T]he inclusion of the three-year period can have no significance in this context other than to impose an outside limit." Because the purpose of the 3-year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period.
 
 
 55
 501 U.S. at 363, 111 S.Ct. at 2782 (quoting Bloomenthal, "The Statute of Limitations and Rule 10b-5 Claims: A Study in Judicial Lassitude," 60 U. Colo. L.Rev. 235, 288 (1989)).
 
 
 56
 Moreover, we note that although the Internal Revenue Code contains certain carefully delineated exceptions to the limitations periods set forth in Sec. 6511, see, e.g., Sec. 6511(c) (where time for assessment is extended by agreement); Sec. 6511(d) (extending filing deadlines for certain classes of claims); Secs. 1311-14 (providing mitigation from limitations periods for certain errors or adjustments in assessment), none of these exceptions pertain here. See Evans Trust v. United States, 199 Ct.Cl. 98, 462 F.2d 521, 524 (1972) ("This relief [provided in Secs. 1311-14] is limited to defined circumstances; the statute does not purport to permit the correction of all errors and inequities." (quoting Gooding v. United States, 164 Ct.Cl. 197, 326 F.2d 988, 990, cert. denied, 379 U.S. 834, 85 S.Ct. 67, 13 L.Ed.2d 42 (1964)) (citation and internal quotations omitted)). Significantly, when it became clear in Dalm that the taxpayer's action there did not come within the mitigation provisions contained in Secs. 1311-14, the Supreme Court concluded that were it "to allow [the taxpayer] to maintain a suit for refund on the basis of equitable recoupment," it would be "doing little more than overriding Congress' judgment as to when equity requires that there be an exception to the limitations bar." Dalm, 494 U.S. at 610, 110 S.Ct. at 1369. That same rationale holds true here.
 
 
 57
 Therefore, we conclude that even if Irwin 's general presumption of equitable tolling were applicable in tax refund cases, that presumption has effectively been rebutted by a statutory scheme that is inconsistent with equitable tolling. This conclusion is in accord with those courts that have determined that Irwin 's presumption as to equitable tolling has been rebutted in other contexts. See, e.g., Central States Pension Fund v. Navco, 3 F.3d 167, 173 (7th Cir.1993) (Sec. 1451(f) of ERISA establishes a split limitations period similar to that discussed in Lampf ), cert. denied, --- U.S. ----, 114 S.Ct. 1062, 127 L.Ed.2d 382 (1994); Smith v. Secretary of H.H.S., 26 Cl.Ct. 116, 119 (1992) (28-month limitations period for filing claims under National Childhood Vaccine Injury Act of 1986 serves as a "cut-off" similar to the statute of repose discussed in Lampf, and thus "equitable tolling does not apply"), aff'd mem., 983 F.2d 1088 (Fed.Cir.1992); see also Dean v. Veterans Admin. Regional Office, 943 F.2d 667, 670 (6th Cir.1991) (30-day limitations period for filing discrimination claim under 5 U.S.C. Sec. 7703(b)(2) which applies "[n]otwithstanding any other provision of law .... overrides any other provisions"), vacated and remanded on other grounds, 503 U.S. 902, 112 S.Ct. 1255, 117 L.Ed.2d 486 (1992); Short v. Belleville Shoe Mfg. Co., 908 F.2d 1385, 1391-92 (7th Cir.1990) (3-year statute of repose in Sec. 13 of Securities Act of 1933 constitutes an "outer limit" that precludes equitable tolling; "[u]nless the 'in no event more than three' language cuts off claims of tolling and estoppel at three years ... it serves no purpose at all"), cert. denied, 501 U.S. 1250, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991); Darms v. McCulloch Oil Corp., 720 F.2d 490, 494 (8th Cir.1983) (statute of repose in Interstate Land Sales Full Disclosure Act is "absolute"); Aldrich v. McCulloch Properties, Inc., 627 F.2d 1036, 1042-43 (10th Cir.1980) (statute of repose "uses strong and unambiguous terms which, if not meant to create an absolute bar to untimely suits ... are extraneous and meaningless").
 
 IV.
 
 58
 In sum, we hold that there is no presumption of equitable tolling applicable in tax refund cases, but that even if such a presumption were applicable in suits for tax refunds, that presumption has been rebutted by a statutory scheme inconsistent with equitable tolling.[6] Accordingly, Parsons' refund claim was untimely, and the district court's dismissal of the complaint for lack of subject matter jurisdiction is
 
 
 59
 AFFIRMED.
 
 DONALD RUSSELL, Circuit Judge, dissenting:
 
 60
 The circumstances in which this tax case arose are simply tragic. Mary Morton Parsons was a wealthy and elderly widow. After her close family died, she entrusted her personal and financial affairs to her physician and attorney, who cruelly abused and defrauded her. For years, they kept her drugged up and isolated her from friends and acquaintances. While she was thus incapacitated, they transferred substantial portions of her assets to themselves and their families. To cover their tracks, they filed a gift tax return on Parsons' behalf and had Parsons pay gift taxes on the fraudulent transfers in the amount of $4,324,822.54.
 
 
 61
 If ever there were a tax case in which equitable tolling should apply, it is this one. Parsons was not a taxpayer who, because of her incapacity, simply neglected to claim a refund of overpaid taxes that the government rightfully collected or withheld from her. Instead, Parsons paid taxes she never would have paid had she not been rendered incompetent and defrauded by her physician and attorney. The government, although not a participant, was an unintentional beneficiary of the physician's and attorney's fraud. In denying the claim for refund filed on behalf of Parsons' estate, the government refuses to return the fraudulent proceeds wrongfully collected from Parsons.
 
 
 62
 The government can certainly afford to do the honorable thing in this case. To the government, which deals with budgets of trillions of dollars, four million dollars is just a drop in the bucket. Requiring the government to return the money improperly collected from Parsons would not impose any burden on it. Such an unbudgeted loss of revenues would destroy many corporations, but the government would hardly be affected.
 
 
 63
 I would apply equitable tolling in this case and require the government to refund to Parsons' estate the money wrongfully collected as gift taxes. Therefore, I respectfully dissent from the majority's opinion.
 
 I.
 
 64
 The majority argues that the rebuttable presumption of equitable tolling announced in Irwin does not apply in tax refund cases. The Supreme Court held in Irwin that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." Supra at 698 (citing Irwin v. Department of Veterans Affairs, 498 U.S. 89, 95-96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)). The majority reasons that, because tax refund suits are always brought against the government and never against private defendants, the Irwin rule has no force in the tax refund context. Supra at 698.
 
 
 65
 I read the holding of Irwin more broadly. In Irwin, the Supreme Court announced a "general rule" that equitable tolling should apply in suits brought against the government. Irwin, 498 U.S. at 95, 111 S.Ct. at 457. Before Irwin, some courts had held that equitable tolling of a statute of limitations could not apply in suits against the government because a statute of limitations was a condition of Congress' waiver of sovereign immunity, which must be construed narrowly. See id. at 93-94, 111 S.Ct. at 456-57. Irwin made clear that equitable tolling did apply in actions against the government. The Supreme Court reasoned that, when Congress waives its sovereign immunity and allows plaintiffs to sue the government in a particular context, it implicitly authorizes equitable tolling of the applicable statute of limitations. Id. at 95, 111 S.Ct. at 457.
 
 
 66
 When the Supreme Court stated its holding that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should apply to suits against the United States," id. at 95-96, 111 S.Ct. at 457-58, it intended to ensure that equitable tolling applied equally against private defendants and the government. The Supreme Court was trying to remedy the unfairness of allowing equitable tolling only in suits against private defendants, but not in equivalent suits against the government. Certainly, the Supreme Court did not intend to allow equitable tolling to be applied more favorably in suits against the government than in suits against private defendants. If a statute or case law limited the application of equitable tolling in suits against private defendants, the Supreme Court intended for that limitation to apply also to suits against the government.
 
 
 67
 The Supreme Court did not consider how the Irwin rule should apply in a context like tax refund suits, where all suits are brought against the government and none against private defendants. The general thrust of the Irwin holding, however, was to expand the application of equitable tolling to suits brought against the government. The Supreme Court did not intend for equitable tolling to be categorically denied in actions that can be brought only against the government.
 
 
 68
 Mental incompetency is one of the fundamental equitable reasons for tolling a statute of limitations.* Lopez v. Citibank, N.A., 808 F.2d 905, 906-07 (1st Cir.1987) (holding that there is no absolute rule requiring equitable tolling whenever there is mental incompetency, but that tolling may apply on a case-by-case basis); Char v. Matson Terminals Inc., 817 F.Supp. 850, 855 (D.Haw.1992) (following Lopez ). Indeed, courts have tolled the limitations periods for filing tax refund claims on grounds of the taxpayer's mental incompetence. Wiltgen v. United States, 813 F.Supp. 1387, 1394-95 (N.D.Iowa 1992); Scott v. United States, 795 F.Supp. 1028, 1035 (D.Haw.1992); Johnsen v. United States, 758 F.Supp. 834, 836 (E.D.N.Y.1991). Although courts will not equitably toll the applicable statute of limitations where a mentally incompetent person was represented by counsel, Lopez, 808 F.2d at 907; Char, 817 F.Supp. at 855-56, that restriction on equitable tolling certainly cannot apply in this case. Parsons was rendered incompetent by her attorney and physician, who kept her heavily sedated and isolated from friends and acquaintances for many years. Given these extreme circumstances, I would toll the limitation periods in Sec. 6511 and allow Parsons' estate to file a claim for refund of the wrongfully paid taxes.
 
 II.
 
 69
 As a backup argument, the majority argues that the presumption of equitable tolling has effectively been rebutted in the context of tax refund suits. Following the lead of the First Circuit in Oropallo v. United States, 994 F.2d 25 (1st Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 705, 126 L.Ed.2d 671 (1994), the majority finds the structure of the limitations periods in Sec. 6511 inconsistent with equitable tolling. The majority finds "compelling" the following reasoning of the Oropallo court:
 
 
 70
 [S]ection 6511(a) serves simply to identify which taxpayers have properly positioned themselves to obtain a refund.... [H]owever, it does not describe which of those potential claimants will actually succeed in pursuing their rights. That task is left to section 6511(b)(2)(A), which, significantly, the tax code characterizes not as a limitations period, but as a "limit on [the] amount of credit or refund".... Unquestionably, then, th[e] date [mandated by Sec. 6511(b)(2)(A) ] serves as an absolute cut-off point.
 
 
 71
 Supra at 699 (quoting Oropallo, 994 F.2d at 31). The majority concedes that Sec. 6511(b)(2) is not a pure statute of repose but "instead works together with 6511(a) to operate like a statute of limitations." Supra at 700. Nonetheless, the majority finds that the tax code's caption of Sec. 6511(b)(2) as a "[l]imit on [the] amount of credit or refund" demonstrates Congress' intent to establish an outside limit on the recovery of funds in tax refund suits. Id. The majority therefore concludes that Sec. 6511(b)(2) operates akin to a statute of repose, which is inconsistent with equitable tolling. Id.
 
 
 72
 I read Sec. 6511(b)(2) simply as a statute of limitations. As the majority recognizes, the limitations periods in Sec. 6511(b)(2) operates together with Sec. 6511(a) as a statute of limitations. In fact, Sec. 6511(a) is the more benign of the two limitations periods. Section 6511(a) merely requires the taxpayer to file his claim for refund either within three years of the filing of the tax return or within two years of the payment the taxes. The taxpayer can easily satisfy this requirement at any time by remembering to file a tax return before filing the claim for refund. Section 6511(b)(2) imposes the more significant limitation on the filing of claims for refund. It requires the taxpayer to file his claim for refund within either two or three years from the date on which the taxes were paid. The taxpayer receives the three-year limitations period as long as he has filed a tax return within the three years preceding the filing of the claim for refund. Otherwise, the taxpayer receives only the two-year limitation period. In effect, Sec. 6511(b)(2) is the real statute of limitations; it identifies which taxpayers have properly positioned themselves to obtain a refund. Section 6511(a) merely determines whether the taxpayer receives the two-year or three-year limitations period under Sec. 6511(b)(2).
 
 
 73
 The caption to Sec. 6511(b)(2) does not magically turn that section into an absolute cut-off of refund claims. Whatever the caption, Sec. 6511(b)(2) is simply a statute of limitations, requiring the taxpayer to file his claim for refund within either two or three years of the payment of taxes. Nothing about the structure of Sec. 6511 or the phrasing of the caption to Sec. 6511(b)(2) suggests that Congress intended Sec. 6511(b)(2) to serve as an absolute cut-off of refund claims. Like any statute of limitations, Sec. 6511(b)(2) can be equitably tolled in appropriate circumstances.
 
 
 74
 The statutory scheme in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), presents a different situation. The Lampf case dealt with the following statute of limitations applicable to securities fraud suits under Sec. 10(b) of the Securities Exchange Act of 1934: "No action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation." Lampf, 501 U.S. at 358-61 and n. 6, 111 S.Ct. at 2779-81 and n. 6 (citing 15 U.S.C. Sec. 78i(e)). In this statutory scheme, the three-year limitation acts as a statute of repose. The plaintiff must sue within three years of the occurrence of the securities violation, regardless of whether the plaintiff knew during that three-year period that the violation had occurred. The three-year period operates as an absolute cut-off, and there is no room for a court to expand the limitations period, no matter how equitable the grounds. Thus, a plaintiff who knows about a securities fraud violation but waits more than a year to sue is barred from suing because of his own delinquency, but even the most conscientious plaintiff is barred from filing suit if he discovers the fraud more than three years after its occurrence.
 
 
 75
 The majority's comparison of Sec. 6511(b)(2) to the limitations period in Lampf is unavailing. The three-year limitations period in Lampf could operate only as a statute of repose. In light of the one-year limitations period for those who discover a securities fraud violation, Congress must have intended the three-year period to serve as an absolute cut-off of claims. The limitations period in Sec. 6511(b)(2) simply requires a taxpayer to file his claim for refund within two or three years of the payment of taxes. Nothing about Sec. 6511(a) suggests that Congress intended Sec. 6511(b)(2) to operate as an absolute cut-off of refund claims. Therefore, I disagree with the majority's conclusion that the presumption of equitable tolling has been rebutted in the context of tax refund suits.
 
 III.
 
 76
 For the foregoing reasons, I respectfully dissent from the opinion of the majority. I would apply the doctrine of equitable tolling and allow Parsons' estate to collect a refund of her wrongfully paid taxes.
 
 
 
 [1]
 As the Court in Irwin confirmed, the reverse holds true as well:
 Because the time limits imposed by Congress in a suit against the Government involve a waiver of sovereign immunity, it is evident that no more favorable tolling doctrine may be employed against the Government than is employed in suits between private litigants.
 498 U.S. at 96, 111 S.Ct. at 457-58.
 
 
 [2]
 Chief Judge Posner, in a recent case addressing the applicability of the doctrine of laches against the government, suggested the possibility of "draw[ing] a line between government suits in which the government is seeking to enforce either on its own behalf or that of private parties what are in the nature of private rights, and government suits to enforce sovereign rights," and allowing equitable relief only in the former class of cases. United States v. Administrative Enterprises, Inc., 46 F.3d 670, 673 (7th Cir.1995). The language in Irwin certainly supports this distinction
 
 
 [3]
 Recently, in Capital Tracing, Inc. v. United States, 63 F.3d 859 (9th Cir. 1995), the Ninth Circuit, after noting that " 'the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States,' " id. at 861 (quoting Irwin, 498 U.S. at 95-96, 111 S.Ct. at 457-58), inexplicably went on to hold this presumption applicable to a wrongful levy suit that could only be brought against the government. Id. at 862. The Ninth Circuit did not explain why the Irwin presumption should apply to a suit against the government that could not be brought against a private defendant, and indeed the court failed even to acknowledge this inconsistency. Accordingly, we do not find Capital Tracing persuasive
 
 
 [4]
 The only other circuit to consider the applicability of equitable tolling principles in a tax refund case, the Eleventh Circuit, concluded that "general principles of equity may not override statutory requirements for timely filing of tax refund claims." Vintilla v. United States, 931 F.2d 1444, 1446 (11th Cir.1991) (citations and internal quotations omitted). In so concluding, the court in Vintilla relied primarily on Dalm; it referenced Irwin only in a footnote, noting that in any event the taxpayers there did not merit equitable relief. Id. at 1447 n. 1. In subsequent cases the Eleventh Circuit has assumed arguendo that "the statute of limitations governing tax refund suits ... may under some circumstances be equitably tolled." First Alabama Bank, N.A. v. United States, 981 F.2d 1226, 1228 (11th Cir.1993); see also Rosser v. United States, 9 F.3d 1519, 1523 n. 4 (11th Cir.1993). The Seventh Circuit has left the issue open. See Overhauser v. United States, 45 F.3d 1085, 1089 (7th Cir.1995)
 
 
 [5]
 We disagree, however, with one of the analogies drawn by the First Circuit between Sec. 6511(a) and the one-year period discussed in Lampf. Describing the Court's rationale in Lampf, the First Circuit observed that "once someone who has been defrauded knows the relevant facts, the 1-year period [under Sec. 9(e) ] gives that person ample time in which to sue and there is no need to toll the 1-year limitations period." 994 F.2d at 30. The First Circuit then concluded that:
 [a] similar state of knowledge respecting the right to a refund can be attributed to individual calendar year taxpayers who file income tax returns. The return contains all the information necessary to verify that there has been an overpayment of taxes and that a refund is due. Accordingly, the three-year period in section 6511(a) gives the taxpayer ample time to file a refund claim, and there is no need to toll that period.
 Id. The facts of the case at hand belie this observation. They do not, however, undermine the essential holding in Oropallo that Sec. 6511(b)(2), like the three-year period in Lampf, imposes an absolute cut-off, similar to a statute of repose, which is inconsistent with equitable tolling.
 
 
 [6]
 We note that in any event the grounds for equitable relief here do not seem to rise to the level of those situations in which the Supreme Court in Irwin observed it had previously allowed equitable tolling, i.e., "only sparingly ... where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." 498 U.S. at 96, 111 S.Ct. at 457-58 (footnote omitted). See also Miller v. United States, 949 F.2d 708, 712 (4th Cir.1991) ("courts expressly have prohibited the application of the doctrine of equitable estoppel in cases involving the IRS"); Olson v. Mobil Oil Corp., 904 F.2d 198, 201 (4th Cir.1990) ("Equitable tolling is a narrow limitations exception ... [and] applies only when an employer's reliance on the applicable statute of limitations would be inequitable, because the employer wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." (citation and internal quotations omitted)). There has been no assertion made here that Parsons filed a "defective pleading during the statutory period" or that the government's conduct in any way contributed to her failure to file her refund claim in a timely manner
 
 
 *
 Although there is a line of cases holding that mental incompetence does not toll a statute of limitations, e.g., Harris v. Ford Motor Co., 635 F.Supp. 1472, 1473-74 (E.D.Mo.1986) (citing cases), most of those cases involved claims against the federal government and were decided on sovereign immunity grounds. Lopez v. Citibank, N.A., 808 F.2d 905, 906-07 (1st Cir.1987); Char v. Matson Terminals Inc., 817 F.Supp. 850, 855 (D.Haw.1992)